[Filed November 25, 1887.]

WILLIAM. J. PAUL, APPELLANT, *v.* LOUIS LAND, RESPONDENT.

CHATTEL MORTGAGE — JURISDICTION — TRUST. — The necessity of taking an account, and the matter of trust and confidence between the parties, are sufficient to give a court of equity jurisdiction of the suit, and the real estate mortgage is so connected with the transaction that it could not be separated from the chattel mortgage.

ACCOUNT — HOW TAKEN. — In taking an account between parties, the court will examine the entire account submitted in evidence, and adjust the same according to the rights of the parties.

APPEAL from Klamath County.   Reversed.

*H. K. Hanna*, for Appellant.

*P. P. Prim*, for Respondent.

STRAHAN, J.—The object of this suit is twofold: *First*, to have a deed and certain bills of sale mentioned in the complaint declared mortgages; and *second*, to take an account of the amount due the plaintiff thereon, and to obtain a decree of foreclosure for that sum.   No objection is made to the jurisdiction of the court to foreclose these chattel mortgages; but aside from that, the necessity of an account and matters of trust between the parties are sufficient to give the court jurisdiction.

It is now conceded by both parties that these writings were intended to secure the plaintiff in advances made to the defendant by the plaintiff.   There is, therefore, nothing remaining of the case, except to ascertain from the evidence the amount of the advances.   It appears from the evidence that on the twenty-fourth day of May, 1883, the defendant Louis Land conveyed to the plaintiff an undivided one-half interest of his stock ranch in Poe Valley, on Lost River, in Klamath County, Oregon, for the price and consideration of $2,750.   Prior to this time he had mortgaged the ranch to one Webster to secure the payment of a large sum of money.   That at the time the plaintiff purchased an undivided one half of said ranch, there was due on said mortgage between $2,800 and $3,000; that the same had been assigned to one Morrison, who had caused proceedings to be instituted in the Circuit Court of Klamath County, Oregon, for the purpose of foreclosing the same, and that said suit was then pending.   On the same day that the plaintiff purchased his interest in the ranch, the mortgage thereon, and the note evidencing the debt secured, were assigned to him for the consideration of $1,730.

In this accounting the plaintiff claims the entire sum secured by said mortgage, as well as the expenses of a foreclosure thereof. On the other hand, the defendant claims that the mortgage was temporarily kept alive after the assignment to the plaintiff as a

matter of convenience; but that the $1,730 which the plaintiff paid to Morrison when said mortgage was assigned was in fact so much money advanced for the defendant's use, and was the first payment made by plaintiff for the half of said ranch.

A careful consideration of the evidence lead us to believe that this version of the matter is the more reasonable and probable, under all the circumstances, and without reviewing the evidence leading to this conclusion, we have adopted it as the true one. This will exclude from the account the item claimed on account. of the mortgage.

The following items claimed by the plaintiff appear to us to be proven by a preponderance of the evidence to have been furnished, paid, and advanced to and for the use of the defendant Louis Land, and with which he is chargeable in this case:—

| | |
|---|---:|
| Two checks for $100 each..................................... | $200 00 |
| Interest at 10 per cent from October 28, 1882.......... | 101 99 |
| Cash advanced for State lands ($\frac{1}{2}$)......................... | 135 75 |
| Interest at 10 per cent from May 30, 1883.............. | 60 70 |
| Cash advanced at Land Office............................. | 3 00 |
| Interest at 10 per cent from May 24, 1883.............. | 1 35 |
| Cash advanced to G. T. Baldwin.......................... | 81 00 |
| Interest at 10 per cent since June 6, 1883............... | 36 17 |
| Cash paid for searching records in Yreka............... | 5 00 |
| Interest at 10 per cent from June 15, 1883............. | 2 29 |
| Cash paid for goods at Linkville, $44.37 ($\frac{1}{2}$)........... | 22 18 |
| Interest at 10 per cent from July 10, 1883.............. | 9 68 |
| Cash paid for 124 head of cattle, $1,869.62 ($\frac{1}{2}$)........ | 934 81 |
| Interest at 10 per cent from October 30, 1883.......... | 380 16 |
| Cash paid O. A. Stearns................................... | 3 00 |
| Interest at 10 per cent from November 10, 1883....... | 1 21 |
| Cash by Reams & Martin, $110 ($\frac{1}{2}$)..................... | 55 00 |
| Interest at 10 per cent from January 11, 1883......... | 26 99 |
| Cash for provisions, $5 ($\frac{1}{2}$)............................... | 2 50 |
| Interest at 10 per cent from November 30, 1883...... | 1 00 |
| Cash paid for taxes, $53 ($\frac{1}{2}$)............................... | 26 50 |
| Interest at 10 per cent from March 1, 1884............. | 10 08 |
| Cash paid W. C. Hale...................................... | 9 31 |

| | | |
|---|---:|---:|
| Interest at 10 per cent from September 29, 1884...... | 2 | 90 |
| Cash advanced to E. McElvey, $36 (½)................. | 18 | 00 |
| Interest at 10 per cent from March 1, 1884............ | 6 | 71 |
| Cash for fixing pistol and watch.......................... | 7 | 75 |
| Interest at 10 per cent from March 1, 1884............. | 2 | 90 |
| Cash paid to redeem land sold on execution............. | 727 | 29 |
| Interest at 10 per cent from January 29, 1884......... | 278 | 08 |
| Cash paid to redeem land sold on execution............. | 548 | 25 |
| Interest at 10 per cent from February 9, 1884......... | 181 | 95 |
| Cash paid for taxes and expenses, $83 (½)............... | 41 | 50 |
| Interest at 10 per cent from March 28, 1885............ | 11 | 08 |
| Cash paid for taxes, $102.50 (½).......................... | 51 | 25 |
| Interest at 10 per cent from March 25, 1885............ | 13 | 73 |
| Amount of note............................................... | 25 | 00 |
| Interest at 10 per cent from October 6, 1881............ | 15 | 54 |
| Amount of note............................................... | 70 | 00 |
| Interest at 10 per cent from March 15, 1883........... | 32 | 81 |
| Amount of note............................................... | 100 | 00 |
| Interest at 10 per cent from May 24, 1883.............. | 45 | 00 |
| Amount of note............................................... | 200 | 00 |
| Interest at 10 per cent from August 30, 1883.......... | 84 | 64 |
| Amount of note............................................... | 100 | 00 |
| Interest at 10 per cent from November 24, 1883...... | 40 | 00 |

Total.................................................$4,714 05

The purchase price of one half of the ranch referred to was $2,750; from this sum must be deducted the amount paid by the plaintiff on the Morrison mortgage, $1,730, which leaves a balance due on the farm of $1,020. To this sum must be added interest at ten per cent from time of purchase, May 24, 1883, $459, which added makes $1,479, balance due defendant on the ranch. Deduct this sum from amount due plaintiff, and there remains due plaintiff on this accounting the sum of $3,235.05, for which there will be a decree.

Equity does not do justice by halves. Its principles require the complete administration of justice between the parties before the court. Therefore, we have not hesitated in this case to

examine the entire account submitted in evidence, and to adjust the same according to the real rights of the parties as they appeared to us, notwithstanding some items involved belong to the partnership of Land and Paul; but in such case we have only charged the defendant one half of the sum advanced by the plaintiff. We have seen proper to allow the defendant interest on the balance of the unpaid purchase money for one half the ranch, though the item was not specially claimed upon the trial; but he is manifestly entitled to it.

Annexed hereto is an itemized statement of the items claimed by plaintiff and disallowed :—

| | | |
|---|---:|---:|
| October 21, 1882, to one half of 500 tons of hay...... | $500 | 00 |
| December 7, 1882, to expenses to the ranch............ | 50 | 00 |
| March 15, 1883, to cash by Martin & Reames......... | 180 | 00 |
| May 24, 1883, to expenses in suit at Linkville......... | 65 | 00 |
| August 27, 1883, to expenses at Linkville at court.... | 50 | 00 |
| July 5, 1883, to amount paid Nichols & Abell......... | 250 | 00 |
| November 30, 1883, to cash by Reames & Martin..... | 100 | 00 |
| November 30, 1883, to amount of attorney's fees claimed in Paul v. Land on foreclosure.............. | 721 | 00 |
| Amount disallowed.................................... | $1,916 | 00 |

We do not give any direction as to the order in which the property is to be sold, or which shall be first sold. Usually in such case, equity would require that personal property should be sold first; but that question is remitted to the court below, for such directions as may be equitable upon the application of either party.

The settlement of these accounts, and the adjustment of the rights of the parties growing out of the several writings mentioned in the pleadings, are matters in which the parties are mutually interested, and as to which there might well be honest differences. We therefore direct that neither party shall recover costs against the other, neither in this court nor the court below, and that each party shall pay one half of the clerk's fees in each court.

Let the decree of the court below be reversed and a decree entered herein in accordance with this opinion.